**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHAD IDOL, | ) | |
| individually and on behalf of the class | ) | |
| defined herein, | ) | 08-cv-2819 |
| | ) | |
| Plaintiff, | ) | Judge Gottschall |
| | ) | Magistrate Judge Cox |
| vs. | ) | |
| | ) | |
| UNIFUND CCR PARTNERS; | ) | |
| CREDIT CARD RECEIVABLES FUND, INC., | ) | |
| and ZB LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION[1]**

Plaintiff respectfully requests that this Court enter an order determining that this Fair Debt Collection Practices Act ("FDCPA") action may proceed as a class action against defendants Unifund CCR Partners ("Unifund"), Credit Card Receivables Fund, Inc. ("CCRF") and ZB Limited Partnership ("ZBLP") . Plaintiff defines the class as (a) all individuals (b) against whom defendant Unifund CCR Partners filed a collection lawsuit (c) in Illinois (d) subsequent to January 1, 2008, (e) without attaching to the complaint an assignment that complied with §8b of the Illinois Collection Agency Act ("ICAA").

Plaintiff further requests that Edelman, Combs, Latturner & Goodwin, LLC be appointed counsel for the class.

In support of this motion, plaintiff states:

**NATURE OF THE CASE**

1.     There is a substantial problem with debt buyers suing on debts that they do not own and have no right to sue on.

2.     There are multiple  reported cases in which debtors have been subjected to

---

[1]Exhibits referenced are attached to Memorandum in Support of Plaintiff's Motion for Class Certification.

litigation because they "settled" with A and then B claimed to own the debt.  Smith v. Mallick, 514 F.3d 48 (D.C.Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer [possibly fraudulently] settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result).  See also,  Miller v. Wolpoff & Abramson, LLP, 1:06-CV-207-TS, 2008 U.S. Dist. LEXIS 12283 (N.D.Ind.,  Feb. 19, 2008), where a debtor complained he had been sued twice on the same debt; Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 923 (N.D.Ill. 2000), where the debtor claimed he settled with one agency and was then dunned by a second for the same debt, and Northwest Diversified, Inc. v. Desai, 353 Ill.App.3d 378, 818 N.E.2d 753 (1st Dist. 2004), where a commercial debtor paid the creditor only to be subjected to a levy by a purported debt buyer.

       3.     In Wood v. M&J Recovery LLC,. CV 05-5564, 2007 U.S. Dist. LEXIS 24157 (E.D.N.Y., April 2, 2007), a debtor complained of multiple collection efforts by various debt buyers and collectors on the same debt, and the defendants asserted claims against one another disputing the ownership of the portfolio involved.  Shekinah alleged that it sold a portfolio to NLRS, that NLRS was unable to pay, that the sale agreement was modified so that NLRS would only obtain 1/5 of the portfolio, and that the 1/5 did not include the plaintiff's debt.  Portfolio claimed that it and not Shekinah is the rightful owner of the portfolio.

       4.     In Associates Financial Services Co. v. Bowman, Heintz, Boscia & Vician, P.C., IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, *9-12 (S.D.Ind., April 25, 2001), later opinion, 2004 U.S. Dist. LEXIS 6520 (S.D. Ind., Mar. 31, 2004), allegations were made that a creditor had continued to collect accounts allegedly sold to a debt buyer.

       5.     Courts have also dismissed  numerous collection and foreclosure lawsuits filed in the names of entities that did not own the purported debts.   In re Foreclosure Cases, 1:07CV2282 and 14 others, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio Oct. 31, 2007); In re Foreclosure Cases, 07-cv-166 and 18 others, 2007 U.S. Dist. LEXIS 90812 (S.D. Ohio Nov. 27, 2007); In re Foreclosure Cases, 521 F. Supp. 2d 650 (S.D.Ohio. 2007); In re Foreclosure

Cases, 07-cv-166 and 14 others, 2007 U.S. Dist. LEXIS 95673 (S.D.Ohio, Dec. 27, 2007); NovaStar Mortgage, Inc. v. Riley, 3:07-CV-397, 2007 U.S. Dist. LEXIS 86216 (S.D.Ohio, Nov. 21, 2007); NovaStar Mortgage, Inc. v. Grooms, 3:07-CV-395, 2007 U.S. Dist. LEXIS 86214 (S.D.Ohio., Nov. 21, 2007); HSBC Bank USA v. Rayford, 3:07-CV-428, 2007 U.S. Dist. LEXIS 86215 (S.D.Ohio., Nov. 21, 2007); Everhome Mtge. Co. v. Rowland, 2008 Ohio 1282; 2008 Ohio App. LEXIS 1103 (Ohio App. March 20, 2008) (judgment for plaintiff reversed because it failed to introduce assignment or establish that it was the holder of the note and mortgage); Deutsche Bank National Trust Co. v. Castellanos, 277/07, 2008 NY Slip Op 50033U; 18 Misc. 3d 1115A; 2008 N.Y. Misc. LEXIS 44; 239 N.Y.L.J. 16 (Kings Co., N.Y., Sup. Ct.,  Jan. 14, 2008); HSBC Bank USA, N.A. v. Valentin, 15968/07, 2008 NY Slip Op 50164U; 14 Misc. 3d 1123A; 2008 N.Y. Misc. LEXIS 229 (Kings Co., N.Y., Sup. Ct., January 30, 2008);  HSBC Bank USA, N.A., v. Cherry, 21335/07, 2007 NY Slip Op 52378U; 18 Misc. 3d 1102A; 2007 N.Y. Misc. LEXIS 8279; 239 N.Y.L.J. 2 (Kings Co., N.Y. Sup. Ct., Dec.  17, 2007); Deutsche Bank National Trust Co. v. Castellanos, 15 Misc. 3d 1134A; 841 N.Y.S.2d 819 (Kings. Co., N.Y. Sup. Ct. 2007).

    6.    Debt buyer American Acceptance filed a lawsuit alleging that a broker of charged-off debts sold it debts to which it did not have title.  American Acceptance Co. v. Goldberg, 2:08cv9 (N.D.Ind.).  Another debt buyer, Hudson & Keyse, filed suit alleging that the same debt broker obtained information about consumer debts owned by Hudson & Keyse and used the information to try to collect the debts for its own account, even though it didn't own them.  Hudson & Keyse, LLC v. Goldberg & Associates, LLC, 07-81047-civ (S.D.Fla., filed Nov. 5, 2007).  A similar suit, alleging that the broker resold accounts it did not own, was filed by Old National Bank, Old National Bank v. Goldberg & Associates, 9:08-cv-80078-DMM (S.D.Fla., Jan. 24, 2008).  The same debt broker is accused in another complaint of selling 6,521 accounts totaling about $40 million face value which it did not own. RMB Holdings, LLC v. Goldberg & Associates, LLC, 3:07-cv-00406 (E.D.Tenn., filed Oct. 29, 2007).  Other debt buyers have voiced similar complaints. "Florida Broker Faces Multiple Lawsuits," Collections & Credit Risk, April 2008, p. 8.

7.      An article that appeared in the trade press shortly before the extension of

the Illinois Collection Agency Act to debt buyers stated:

> More collection agencies are turning to the debt resale market as a place to pick up accounts to collect on. Too small to buy portfolios directly from major credit issuers, they look to the secondary market where portfolios are resold in smaller chunks that they can handle.
>
> But what they sometimes find in the secondary market are horror stories: The same portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put up for sale; half the accounts are out of statute; accounts are rife with erroneous information; access to documentation is limited or nonexistent. . . . .

Corinna C. Petry, <u>Do Your Homework; Dangers often lay hidden in secondary market debt portfolio</u>

<u>offerings. Here are lessons from the market pros that novices can use to avoid nasty surprises,</u>

Collections & Credit Risk, March 2007, pg. 24 Vol. 12 No. 3.

8.      In a related abuse, debt buyers would "purchase" debts with minimal

information about the debtor and then try to "collect" them from anyone with a similar name.  In

2004, the Federal Trade Commission shut down a debt buyer called CAMCO headquartered in

Illinois.  The following is from a press release issued by the FTC in connection with that case.

> . . . In papers filed with the court, the agency charged that as much as 80 percent of the money CAMCO collects comes from consumers who never owed the original debt in the first place. Many consumers pay the money to get CAMCO to stop threatening and harassing them, their families, their friends, and their co-workers.
>
> According to the FTC, CAMCO buys old debt lists that frequently contain no documentation about the original debt and in many cases no Social Security Number for the original debtor. CAMCO makes efforts to find people with the same name in the same geographic area and tries to collect the debt from them – whether or not they are the actual debtor. In papers filed with the court, the FTC alleges that CAMCO agents told consumers – even consumers who never owed the money – that they were legally obligated to pay. They told consumers that if they did not pay, CAMCO could have them arrested and jailed, seize their property, garnish their wages, and ruin their credit. All of those threats were false, according to the FTC. . . . (http://www.ftc.gov/opa/2004/12/camco.htm)

9.      In order to protect Illinois residents against this sort of abuse, the Illinois

Collection Agency Act ("ICAA") was amended effective January 1, 2008 to define debt buyers as

"collection agencies".  This makes applicable the special assignment requirements in ICAA §8b, 225

ILCS 425/8b.  Illinois courts had held prior to the amendment that a party that was required to but

did not have such an assignment does not have a valid claim and that the defendant in such a case

is entitled to judgment.  Business Service Bureau, Inc. v. Webster, 298 Ill. App. 3d 257; 698 N.E.2d

702 (4th Dist. 1998).

10.    Section 8b of the ICAA provides:

**Sec. 8b.  An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided:**

**(a) The assignment is manifested by a written agreement, separate from and in addition to any document intended for the purpose of listing a debt with a collection agency. The document manifesting the assignment shall specifically state and include:**

**(i) the effective date of the assignment; and**

**(ii) the consideration for the assignment.**

**(b) The consideration for the assignment may be paid or given either before or after the effective date of the assignment. The consideration may be contingent upon the settlement or outcome of litigation and if the claim being assigned has been listed with the collection agency as an account for collection, the consideration for assignment may be the same as the fee for collection.**

**(c) All assignments shall be voluntary and properly executed and acknowledged by the corporate authority or individual transferring title to the collection agency before any action can be taken in the name of the collection agency.**

**(d) No assignment shall be required by any agreement to list a debt with a collection agency as an account for collection.**

**(e) No litigation shall commence in the name of the licensee as plaintiff unless: (i) there is an assignment of the account that satisfies the requirements of this Section and (ii) the licensee is represented by a licensed attorney at law. . . .**

11.    Furthermore, the assignment must be attached to the complaint.  Candice

Co. v. Ricketts, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996).

12.    Finally, the assignee is required "in his or her pleading on oath allege that

he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired title.

. . . "   735 ILCS 5/2-403(a).

13.    Defendant Unifund CCR Partners, a debt buyer regulated by the ICAA

5

since January 1, 2008, systematically files collection lawsuits without compliance with ICAA §8b and, therefore, without valid claims.

14.    Plaintiff complains that such practice violates both the Fair Debt Collection Practices Act, 15 U.S.C. §§1692e and 1692f, and ICAA §9. Plaintiff alleges that the filing of lawsuits without legally-sufficient title to the debts sued upon is a "false, deceptive, or misleading representation or means in connection with the collection of any debt" (15 U.S.C. §1692e), a "false representation of . . . (A) the character, amount, or legal status of any debt" (15 U.S.C. §1692e(2)), a "threat to take any action that cannot legally be taken" (15 U.S.C. §1692e(5)), and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" (15 U.S.C. §1692e(10)), as well as an unfair practice, in violation of 15 U.S.C. §1692f. Plaintiff further contends that defendant violated 225 ILCS 425/8b by filing suit without an assignment in the form specified therein and "Attempt[ed] or threaten[ed] to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. . . ." 225 ILCS 425/9. Finally, plaintiff contends that the same conduct constitutes an unfair practice within the meaning of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

**CLASS CERTIFICATION REQUIREMENTS**

15.    All requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been met.

16.    It is reasonable to infer from the following facts that the number of class members exceeds the approximately 40 required for certification. (A) This action complains of a standard practice used by defendant. Defendant uses form complaints and never has the required assignment attached. (B) Defendant Unifund CCR Partners has filed, since January 1, 2008, more than 1000 lawsuits against residents of Illinois. Appendix A is a printout of the Cook County Circuit Court listing of its filings. Other cases have been filed in other counties.

17.    Plaintiff will obtain the exact number of class members through discovery, and requests a briefing schedule long enough to obtain such information.

18.     There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.  The primary question is whether defendant's practice violates the FDCPA, ICAA, and the Illinois Consumer Fraud Act.

19.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

20.     Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.  (Appendix B)

21.     A class action is superior to other alternative methods of adjudicating this dispute, in that:

        a.     Congress specifically contemplated FDCPA class actions as a principal means of enforcing the statute.

        b.     A class action is necessary to determine that defendant's conduct is a violation of law and bring about its cessation.

22.     In further support of this motion, plaintiff submits the accompanying memorandum of law.

23.     Plaintiff is filing a class certification motion at this time because of the decision in White v. Humana Health Plan, Inc., 06 C 5546, 2007 U.S.Dist. LEXIS 32263 (N.D.Ill., May 2, 2007).

WHEREFORE,  plaintiff respectfully requests that this Court enter an order determining that this action may proceed as a class action.


Respectfully submitted,


s/ Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs

7

James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\21348\Pleading\P's Motion for Class Cert_Pleading.wpd

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on May 21, 2008, the foregoing document was filed electronically.  A copy of the foregoing document was served via US mail on the following parties:


Unifund CCR Partners
10625 Techwoods Circle
Cincinnati, Ohio 45242

Credit Card Receivables Fund, Inc.
10625 Techwoods Circle
Cincinnati, Ohio 45242

ZB Limited Partnership
c/o The Prentice-Hall Corporation System, Inc.
2711 Centerville Road, Suite 400
Wilmington, DE  19808


                                        s/ Daniel A. Edelman
                                        Daniel A. Edelman

9